IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKIE FOY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 15-CV-3071 |
| | ) | |
| CITY OF BLUE ISLAND, BLUE ISLAND | ) | Honorable Milton I Shadur |
| POLICE DEPARTMENT OFFICERS | ) | |
| ARMONDO ESPARZA (Badge No. 225), | ) | |
| GEOFFREY FARR (Badge No. 235), | ) | |
| TIMOTHY C. HANNAGAN (Badge No. 248), | ) | |
| JOHN MURRAY (Badge No. 165), FRANK | ) | |
| PODBIELNIAK (Badge No. 214), TIMOTHY | ) | |
| SISK (Badge No. 154), JASON SLATTERY | ) | |
| (Badge No. 159), and DAVID STONE (Badge | ) | |
| No. 167), and EVERGREEN PARK POLICE | ) | |
| DEPARTMENT OFFICERS D. LAZINEK | ) | |
| Badge No. 4119) and E.A. MAJKA | ) | |
| (Badge No. 4115, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MAJKA'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant, Edward Majka ("Majka"), by and through one of his attorneys, Julie M. Koerner, for his Answer to Plaintiff's Amended Complaint, state as follows:

**INTRODUCTION**

1. This action is brought pursuant to 42 U.S.C. § 1983 and the United States Constitution to recover for personal injuries, pain and anguish Foy sustained as a result of the defendants' unnecessary, excessive and unreasonable use of force in apprehending and arresting him on May 17, 2013.

**ANSWER:** **Defendant Majka admits that Plaintiffs' pleading purports to bring a claim under §1983 and the United States Constitution. In further answering, Defendant Majka denies the remaining allegations of Paragraph 1.**

2. In summary, following a foot chase and search, defendants found Foy unarmed

1

and lying passively on his back on a screened-in porch with his hands in the air. Defendants surrounded the porch with more than 10 officers and a K-9 unit. Even though Foy passively submitted to the defendants and complied with their demands, defendants nonetheless brutalized Foy, twice deploying a department-issued laser, kicking and punching him while he lay on the ground, and slamming his head into fixed objects. Defendants continued to brutalize Foy after handcuffing him and taking him into custody. Those defendants who did not attack Foy not only watched without intervening, but taunted Foy and cheered their fellow officers as those officers unnecessarily harmed Foy.

**ANSWER:** **Defendant Majka admits that during a canine search for Plaintiff the canine located Plaintiff in an enclosed porch. Defendant Majka denies that he was present for or engaged in any of the conduct alleged herein this Paragraph 2. In further answering, Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 2 as it relates to actions by Blue Island police officers.**

3. Foy's injuries are the result not only of the individual defendants' conduct in this case, but of a pattern and practice at the Blue Island Police Department of using unnecessary force in apprehending non-violent, unarmed suspects. In particular, it is commonplace for Blue Island Police Department officers to misuse their tasers by deploying them in situations, such as this one, where the use of a taser is unreasonable and unnecessary, and further, to either fail to recognize the involuntary body movements of a tased person or use those involuntary body movements as a pretext to exert even more force.

**ANSWER:** **Defendant Majka denies that he caused any injury to Plaintiff or that he used a taser. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 3.**

4. Accordingly, Foy brings this action and states claims for the individual defendants' excessive use of force in violation of 42 U.S.C. § 1983 (Count I), the individual defendants' unlawful failure to intervene (Count II), and, under *Monell v. apartment of Social*

*Services of New York,* for the policies and practices of the City of Blue Island that caused Foy's constitutional rights to be violated (Count III).

**ANSWER:** **Defendant Majka admits that Plaintiffs' pleading purports to bring a claim under §1983, and in further answering, denies that he engaged in any misconduct as alleged.**

## PARTIES

5.  Plaintiff Rickie Foy is currently an inmate at Centralia Correctional Center, located in Centralia, Illinois. At the time of his arrest on May 17, 2013, Foy lived at 2625 West New Street in Blue Island, Illinois, with his fiancée and four children.

**ANSWER:** **Defendant Majka admits that Foy is currently an inmate in the Illinois Department of Corrections. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 5.**

6.  Defendant City of Blue Island is a duly incorporated municipality located on the South side of Chicago in Cook County. The City of Blue Island is the employer of the Blue Island Police Department officers who are defendants in this action.

**ANSWER:** **Defendant Majka admits the allegations of Paragraph 6.**

7.  Defendant Armando Esparza (Badge No. 255) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Esparza was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7.**

8.  Defendant Geoffrey Farr (Badge No. 235) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Farr was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 8.**

9. Defendant Timothy C. Hannagan (Badge No. 248) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Hannagan was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER: Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 9.**

10. Defendant John Murray (Badge No. 165) is an employee of the City of Blue Island and a detective for the Blue Island Police Department. Defendant Murray was the arresting officer of record and was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER: Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 10.**

11. Defendant Frank Podbielniak (Badge No. 214) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Podbielniak was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER: Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 11.**

12. Defendant Timothy Sisk (Badge No. 154) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Sisk was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER: Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 12.**

13. Defendant David Stone (Badge No. 167) is an employee of the City of Blue Island and a police officer for the Blue Island Police Department. Defendant Stone was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER: Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 13.**

14. Defendant D. Lazinek (Badge No. 4119) is an employee of the City of Evergreen Park and a police officer for the Evergreen Park Police Department in its K-9 unit. Defendant Lazinek was present for and assisted in the arrest of Foy on May 17, 2013.

**ANSWER:** **Defendant Majka admits that Dennis Lazinek was employed by the Village of Evergreen Park as a police officer on May 17, 2013 and assigned to the canine unit. Defendant Majka denies that he was present for and assisted in Foy's arrest on May 17, 2013.**

15. Defendant E. A. Majka (Badge No. 4115) is an employee of the City of Evergreen Park and a police officer for the Evergreen Park Police Department in its K-9 unit. Defendant Majka was present for and assisted in the arrest of Foy on May 17, 2013. (Together, defendants Esparza, Farr, Hannagan, Murray, Podbielniak, Sisk, Slattery, Stone, Lazinek and Majka are sometimes referred to in this Amended Complaint as the "Individual Defendants").

**ANSWER:** **Defendant Majka admits that that on May 17, 2013 he was employed by the Village of Evergreen Park as a police officer. Defendant Majka denies the remaining allegations of Paragraph 15.**

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a), because this action arises under the laws and Constitution of the United States.

**ANSWER:** **Defendant Majka admits that jurisdiction is proper.**

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because defendants reside in this District and because the events giving rise to Foy's claims occurred in this District.

**ANSWER:** **Defendant Majka admits that venue is proper.**

## FACTUAL ALLEGATIONS

A.  **Defendants' Use of Excessive Force During Foy's Arrest on May 17, 2013.**

18. On the afternoon of May 17, 2013, Foy was returning home from the park with his fiancée and children when he observed defendants Murray and Podbielniak speaking to a neighbor. Foy drove away from the scene and was pursued by defendants Murray and Podbielniak, as well as other defendants.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 18.**

19. A short time later, Foy parked his vehicle near his home and exited on foot Defendants pursued him on foot through his neighborhood. When defendants lost sight of Foy, he hid in an enclosed, screened-in porch in the rear of his neighbor's house, at 2633 West New Street.

**ANSWER:** **Defendant Majka denies that he pursued Foy from his vehicle through his neighborhood on foot. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 19 as they relate to other Defendants.**

20. Foy lay down on his back on the porch and remained there for about half an hour.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 20.**

21. Foy was unarmed.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 21.**

22. Defendants from the Blue Island Police Department called in a K-9 unit from the nearby Evergreen Park Police Department. Evergreen Park police officers and defendants Lazinek and Majka responded to this call along with a police dog.

**ANSWER:** **Defendant Majka admits the allegations of Paragraph 22.**

23. Foy had lost a shoe during the pursuit, which defendant Lazinek and his dog used to get Foy's scent and track him to the enclosed porch.

**ANSWER:** **Defendant Majka admits that they used a shoe to assist the canine in tracking Foy, but deny the further allegations of Paragraph 23.**

24. When defendant Lazinek arrived at the porch, he saw Foy lying passively on the ground.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 24.**

25. Defendant Lazinek pointed his firearm at Foy and yelled at him to "freeze," raise his hands and remain still.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 25.**

26. Foy complied with defendant Lazinek's instructions. He remained still on the ground and raised his empty hands above him.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 26.**

27. Moments later defendant Sisk entered the porch. Defendant Sisk immediately, and without provocation, shot Foy with his taser while Foy was still lying passively on the ground.

**ANSWER:** **Defendant Majka admits that Blue Island police officers entered the porch, but lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 27.**

28. The shot from the taser hit Foy in the inner thigh, causing him excruciating pain.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 28.**

29. A laser is a powerful weapon that uses a 50,000 volt electrical signal to override a person's central nervous system. As one manufacturer describes it: one shot from a taser "causes an uncontrollable contraction of the muscle tissue, allowing the [taser] device to physically debilitate a target regardless of pain tolerance or mental focus . . . [and results in] muscle spasms

7

until the target is in the fetal position on the ground." (www.defenseproductsl0l.com/tasers_introductionftaser_questions.html#6 (last visited May 13, 2015))

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 29.**

30. A second and third defendant also entered the porch just behind defendant Sisk. As defendant Sisk was tasing Foy, and while the electricity from the taser prevented Foy from controlling his body, additional defendants immediately, and without provocation, began kicking and punching Foy repeatedly in his ribs and stomach.

**ANSWER:** **Defendant Majka denies that he entered the porch and that he kicked or punched Foy at any time. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 30 as they pertain to other Defendants.**

31. As Foy was being kicked and punched, he continued to feel the shock of 50,000 volts of electricity shooting through his body. When he regained control of his body, Foy balled up in a fetal position on his side to protect himself from the defendants' punches and kicks.

**ANSWER:** **Defendant Majka denies he kicked or punched Foy at any time. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 31.**

32. The defendants had forced Foy onto his stomach and had pulled his hands behind his back when one of the defendants pressed his knee into Foy's neck, pinning him to the ground, and another defendant screamed that defendant Sisk should "shoot him in his nuts."

**ANSWER:** **Defendant Majka denies that he engaged in any of the acts alleged in Paragraph 32, or that he was on the porch when Foy was taken into custody by Blue Island police officers. In further answer, Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 32 as they pertain to other Defendants.**

33. Without provocation and while Foy was passively lying face down on the ground with his hands behind his back, defendant Sisk again deployed his taser on Foy.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 33.**

34. The pain from the second tasing was so excruciating that Foy screamed out loudly enough for his fiancée to hear him from the other side of the neighbor's house.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34.**

35. Defendants then handcuffed Foy and dragged him from his position on the ground. Because of the taser shocks and his injuries, Foy had difficulty standing or walking.

**ANSWER:** **Defendant Majka denies that he handcuffed Foy or dragged Foy from his position on the ground. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 35 or the allegations of Paragraph 35 as they relate to other Defendants.**

36. Defendants then led Foy from the enclosed porch in the back of the house, between the two houses, to the street. Along the way, defendants intentionally and without provocation pushed Foy into fixed objects such as the fence and the wall of the neighbor's house.

**ANSWER:** **Defendant Majka denies that he led Foy from the enclosed porch in the back of the house to the street and further denies that he pushed Foy into any fixed objects. Defendant Majka admits that Blue Island officers led Foy out to the street. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 36 as they relate to other Defendants.**

37. As he was being put into the back of a police vehicle, another defendant, without provocation, punched Foy in his face, telling him "welcome to Blue Island."

**ANSWER:** **Defendant Majka denies that he punched Foy in the face, telling him "welcome to Blue Island." Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 37 as they relate other Defendants.**

38. Additionally, on the ride from the scene of his arrest to the Blue Island Police Department, the defendant driving the vehicle repeatedly stopped the vehicle abruptly,

9

purposefully causing Foy's head to bang against the glass separating the front and back seats.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 38.**

39. When they arrived at the Blue Island Police Department, defendants continued to brutalize Foy. Without provocation and even though he already was handcuffed, defendants placed Foy in a painful thumb-lock as they walked him into the station.

**ANSWER:** **Defendant Majka denies that he brutalized Foy at any point, and further denies that he placed Foy in a painful thumb-lock. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 39 as they relate to other Defendants.**

40. As he was hunched over from the pain of the thumb-lock and the injuries he had sustained earlier, defendants continued to taunt Foy and make sarcastic remarks such as: "What's wrong? That doesn't hurt, does it?"

**ANSWER:** **Defendant Majka denies that he ever taunted Foy or made sarcastic remarks to him. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 40 as they relate to other Defendants.**

41. Throughout Foy's brutalization, the individual defendants who did not themselves exert excessive force against Foy observed their fellow officers doing so but refused to intervene. To the contrary, those defendants encouraged the physical violence of those brutalizing Foy.

**ANSWER:** **Defendant Majka denies that he engaged in any misconduct, encouraged any misconduct by other officers, personally observed any misconduct, or otherwise refused to intervene to prevent any alleged misconduct. Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 41 as they relate to other Defendants.**

**B.** **The Aftermath of Defendants' Excessive Force.**

42. Defendants' excessive force caused Foy tremendous pain and significant injuries, including contusions and bruising to his face and body and the loss of a permanent tooth.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 42.**

43. As a result of defendants' beating, Foy's shirt was soaked in his blood and had to be replaced.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 43.**

44. As a result of his injuries, Foy was transported in an ambulance to Blue Island Metro South Hospital for consultation and treatment.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 44.**

45. Foy also suffered serious mental anguish and emotional distress as a result of defendants' conduct.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 45.**

**C.** **Blue Island's Long Pattern and Practice of Excessive Force In Similar Cases.**

46. The Blue Island Police Department has a long history of using unnecessary and unreasonable force in the course of their work, and in particular of misusing their department-issued tasers.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 46.**

47. Although it is a small city containing only about 23,000 residents as of the 2010 census, for many years Blue Island has received a disproportionate number of complaints involving policy brutality.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 47.**

48. For example, in 2004 alone, in the wake of the death of one individual at the hands of police officers employed by the City of Blue Island, the City and its officers were sued in ten or more cases involving allegations of police brutality. *See, e.g.,* Police in Blue Island

11

Target of 12 Lawsuits, Chicago Tribune October 29, 2004 (available at: http://articles. chicagotribune.corn/2004-10-29/news/0410290163_1_lawsuits-police-usedexcessive-force-police-officer (last visited March 13, 2015)) Plaintiffs in those cases and their attorneys alleged that for many years, the Blue Island Police Department had intentionally ignored and failed to investigate claims of police brutality, and that citizens of Blue Island were afraid to speak out about the brutality for fear of retribution. *See id.*

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 48.**

49. In at least one of those cases, the plaintiff made allegations disturbingly similar to what happened to Foy. The plaintiff alleged that the Blue Island Police Department officers unreasonably used a laser to harm him by shooting plaintiff in the groin with the taser without provocation while he was in a submissive position. *See McDaniel v. Officer Muller, Unknown Officers and the City of Blue Island, N.D.* Ill. Case No. 04-cv-6941, Dkt. 1, Complaint at 4 (alleging that "DEFENDANT OFFICERS tasered the groin area of the plaintiff, (while he was handcuffed) and pepper sprayed him in the face.")

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 49.**

50. The Blue Island Police Department's overuse and misuse of tasers has continued revealing a troubling pattern. For example:

(a) In *Nelson v. Blue Island Police Department, et at.,* the plaintiff alleged Blue Island Police officers assaulted him for no reason, placed him in handcuffs, pinned him with one officer's knee while "another officer shot tazer gun in [gluteus maximus] while I was spread out face down on the sidewalk." N.D. Ill. Case No. 06-cv-1766, Dkt. 1, Complaint at p. 1.

(b) In *Anderson v. Blue Island Police Department, et al.,* the plaintiff alleged that he suffered fiom clinical depression and anxiety, and had attempted suicide with a knife when paramedics were summoned to the scene. Before he even knew the police were present, they assaulted him with a taser: "With no warning, one of the

12

        Defendant [Blue Island Police] Officers then shot Anderson in the back with a taser, causing Anderson to fall to the ground." N.D. Ill. Case No. 09-cv-05158, Dkt. 1, Complaint at ¶¶ 7-13.

    (c)    In *Flores v. City of Blare Island, et al.,* the plaintiff alleged that he was a victim in a hit-and-run car accident and, in a disoriented state, began walking home from the scene of the accident when he was approached by officers of the Blue Island Police Department. The plaintiff alleged he told officers he was in an accident and wanted to go home, and that the following then occurred: "Sergeant Schultz then made a movement to grab Plaintiff.... The Plaintiff's hand and Sergeant Schultz's hand touched momentarily at which point Sergeant Schultz exclaimed; 'You mother flicker, you gonna assault me? I'm gonna taser your ass!' Plaintiff repeatedly pled with the Defendant Schultz to refrain from [] tasering him, explaining that he had an electronic implant device in his spinal cord. Sergeant Schultz then deployed a taser gun, striking Plaintiff in the chest. Plaintiff was then tackled by the other Defendant Officers, who tried to force his injured arm and shoulder behind his back while he was still shaking from Sergeant Schultz's tasering." N.D. Ill. Case No. 13-cv-05956, Dkt. 1, Complaint at 8-20.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 50, subparagraphs (a) through (c) inclusive.**

    51.    These complaints are only a sampling of those that have been made publicly. The true number of complaints regarding the Blue Island Police Department's unnecessary use of tasers is certainly much higher.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 51.**

    52.    Indeed, on May 17, 2013, the same day that Foy was arrested and tased, Foy learned that another individual had been unnecessarily tased by police. As Foy was in custody at the Blue Island Police Department, he could hear another individual in custody complaining that the officers who arrested him should not have tased him and that, in his view, the use of a taser was completely unnecessary.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 52.**

    53.    Notwithstanding this high rate of complaints, the City of Blue Island and its

Police Department have failed to take steps to address their officers' frequent and unreasonable use of force, and in particular their frequent and unreasonable use of tasers against individual citizens. The City of Blue Island's policies, practices and customs fail in this regard in a number of respects:

(a) Upon information and belief, the City of Blue Island and its Police Department maintain an express policy that authorizes officers to shoot citizens with the officers' tasers in a broad range of circumstances where such use of force is not constitutionally permissible;

(b) Even if not part of an express policy, the repeated use of tasers by police officers employed by the City of Blue Island in situations where their use is neither necessary nor constitutionally permissible is so widespread, permanent and well settled as to constitute a custom or usage with the force of law;

(c) The City of Blue Island and its Police Department have failed to train their officers to address, without using a taser, common, obvious and recurring situations where such use of force is neither necessary nor constitutionally permissible;

(d) The City of Blue Island and its Police Department have failed to train their officers to recognize the symptoms of an individual who is incapacitated as a result of being tased and to avoid applying unnecessary and unconstitutional force against individuals who are incapacitated as a result of being tased;

(e) Upon learning of the many incidents of police brutality alleged in 2004 and beyond, the City of Blue Island and its Police Department have failed to provide additional training to their officers in how to address common, obvious and recurring situations without using force that is neither necessary nor constitutionally permissible;

(f) Upon learning of the many incidents of police brutality alleged in 2004 and beyond involving the use of tasers, the City of Blue Island and its Police Department have failed to train their officers in the proper use of tasers and/or to recognize the symptoms of an individual who is incapacitated as a result of being tased and to avoid applying unnecessary and unconstitutional force against individuals who are incapacitated as a result of being tased;

(g) The City of Blue Island and its Police Department have consistently and repeatedly failed to discipline and/or punish their police officers for shooting individual citizens with their tasers in situations where such use of force is neither necessary nor constitutionally permissible or for otherwise misusing tasers.

**ANSWER:** **Defendant Majka lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 53, subparagraphs (a) through (g) inclusive.**

## COUNT I

### (42 U.S.C. § 1983: Excessive Use of Force Against Individual Defendants)

54. Foy re-alleges and incorporates the allegations in paragraphs 1 through 53 of the Amended Complaint as if fully set forth herein.

**ANSWER:** **Defendant Majka adopts and incorporates his answers to the preceding paragraphs as though fully set forth herein this Paragraph 54 of this Count I.**

55. The Individual Defendants' use of force was unjustified, excessive and objectively unreasonable.

**ANSWER:** **Defendant Majka denies that he was present for or engaged in any unjustified, excessive or unreasonable use of force.**

56. The Individual Defendants' misconduct was undertaken intentionally with malice, willfulness, and reckless indifference to Foy's constitutional rights.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 56.**

57. As a result of the Individual Defendants' unjustified and excessive use of force, Foy has suffered pain and injury, as well as emotional distress.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 57.**

58. The Individual Defendants' use of force violated Foy's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and therefore gives rise to a cause of action under 42 U.S.C. § 1983.

**ANSWER:** **Defendant Majka denies the allegations of Paragraph 58.**

WHEREFORE, the plaintiff, Rickie Foy, respectfully requests that the Court (a) enter judgment in his favor and against each of the Individual Defendants; (b) grant Foy compensatory

damages for the past and present pain, suffering, mental anguish, emotional distress, and deprivation of constitutional rights that Foy has sustained and continues to sustain; (c) award Foy punitive damages to deter similar misconduct in the future; (d) award Foy his reasonably attorneys' fees and costs pursuant to 42 U.S.C. §1988 and/or other applicable law; and (e) grant such other relief as the Court deems just and appropriate under these circumstances.

**ANSWER:** **Defendant denies that Plaintiff is entitled to any judgment or award of damages against him whatsoever, and prays that this Court enter judgment in his favor as against Plaintiff and for the costs in defending this action.**

## COUNT II

### (42 U.S.C. § 1983: Failure to Intervene Against the Individual Defendants)

59. Foy re-alleges and incorporates the allegations in paragraphs 1 through 53 of the Amended Complaint as if fully set forth herein.

**ANSWER:** **Defendant Majka adopts and incorporates his answers to the preceding paragraphs as though fully set forth herein this Paragraph 59 of this Count II.**

60. Those Individual Defendants that did not physically assault Foy had a reasonable opportunity to prevent other defendants from brutally assaulting Foy, and the attendant violations of Foy's constitutional rights, but failed to intervene.

**ANSWER:** **Defendant Majka denies that allegations of Paragraph 60.**

61. The Individual Defendants' failure to intervene was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to Foy's constitutional rights.

**ANSWER:** **Defendant Majka denies that allegations of Paragraph 61.**

62. As a result of the Individual Defendants' failure to intervene, Foy has suffered pain and injury, as well as emotional distress.

**ANSWER:** **Defendant Majka denies that allegations of Paragraph 62.**

63. The Individual Defendants' failure to intervene violated Foy's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and therefore gives rise to a cause of action under 42 U.S.C. § 1983.

**ANSWER: Defendant Majka denies that allegations of Paragraph 63.**

WHEREFORE, the plaintiff, Rickie Foy, respectfully requests that the Court (a) enter judgment in his favor and against each of the Individual Defendants; (b) grant Foy compensatory damages for the past and present pain, suffering, mental anguish, emotional distress, and deprivation of constitutional rights that Foy has sustained and continues to sustain; (c) award Foy punitive damages to deter similar misconduct in the future; (d) award Foy his reasonably attorneys' fees and costs pursuant to 42 U.S.C. §1988 and/or other applicable law; and (e) grant such other relief as the Court deems just and appropriate under these circumstances.

**ANSWER: Defendant denies that Plaintiff is entitled to any judgment or award of damages against him whatsoever, and prays that this Court enter judgment in his favor as against Plaintiff and for the costs in defending this action.**

## COUNT III

**(42 U.S.C. *§ 1983: Monell* Claim Against the City of Blue Island)**

**Defendant Majka makes no response to the allegations contained in this Count III of Plaintiff's Amended Complaint as said federal claim is not directed against him.**

64. Foy re-alleges and incorporates the allegations in paragraphs 1 through 53 of the Amended Complaint as if fully set forth herein.

65. As set forth above, the City of Blue Island maintains policies and practices that are unconstitutional in themselves and/or cause constitutional violations; specifically, the unreasonable and excessive use of force and failure to intervene by officers of the Blue Island Police Department, including in particular the unnecessary and unreasonable misuse of tasers.

66. The City of Blue Island's policies and practices, as set forth above, are the proximate cause of Foy's constitutional and other injuries in this case.

67. The City of Blue Island's unreasonable and inadequate policies were the result of deliberate indifference by the City of Blue Island to the constitutional rights of plaintiff and similarly situated citizens.

**DEFENDANT DEMANDS TRIAL BY JURY**

                                **EDWARD MAJKA**

By: *S/ Julie M. Koerner*
Julie M. Koerner #6204852
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Phone: 847/291-0200
Fax:   847/291-9230
Email: jkoerner@okgc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICKY FOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-3071 |
| | ) | |
| CITY OF BLUE ISLAND, *et al.,* | ) | Judge Milton I. Shadur |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2015, I electronically filed ***Defendant Majka's Answer to Plaintiff's Amended Complaint*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following participants:

Uriel B. Abt – uabt@tdrlawfirm.com
Brian C. Haussmann – bhaussmann@tdrlawfirm.com
Gary L. Prior – gprior@tdrlawfirm.com
Tabet Divito & Rothstein, LLC

Steven H. Fine – sfinelaw@hotmail.com
Law Offices of Steven H. Fine

Michael Kreloff – capitolaction@yahoo.com
Law Offices of Michael Kreloff

Sally H. Saltzberg – shsaltzberg@lofsal.com
Sally H. Saltzberg, P.C.

By: *S/ Julie M. Koerner*
Julie M. Koerner #6204852
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Phone: 847/291-0200
Fax: 847/291-9230
Email: jkoerner@okgc.com